FRANK et al. v. AUERBACH.

(Supreme Court, Appellate Term. June 3, 1908.)

LANDLORD AND TENANT—LEASE—CONSTRUCTION—INSURANCE.

Persons not the owners of the premises gave a lease thereof; the lessee
undertaking to bear "any and all increase of insurance on such premises."
The lessors were liable to the owners for all insurance. After the as-
signee of the lessee, who assumed all the liabilities under the lease, took
possession of the premises, extensive additions and improvements were
made and increased insurance taken out, as well as plate glass insurance,
payable to the owners. Held, that the terms of the lease were broad
enough to render the lessee or his assignee liable for the increased insur-
ance and the plate glass insurance even though it was payable to the own-
ers and not to the lessors.

Appeal from Municipal Court, Borough of Manhattan, Twelfth
District.

Action by Samuel Frank and others against Meyer Auerbach to
recover payments made for insurance under a lease. From a judg-
ment for plaintiffs for less than their claim, plaintiffs appeal. Revers-
ed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and
GREENBAUM, JJ.

Lewis S. Goebel (William Porter Allen, of counsel), for appellants.
Meyer Auerbach (Benjamin F. Spellman, of counsel), for re-
spondent.

GIEGERICH, J. The plaintiffs appeal from a judgment rendered
in their own favor by the court below after a trial without a jury;
the ground of such appeal being that the judgment is inadequate.

The action was brought to recover the sum of $326.47, made up of various items of water rates and other and more important items of payments for insurance.

The defendant's liability is predicated upon the provisions of a lease made by the plaintiffs, as landlords, to the defendant's assignor, as tenant, by which the tenant agreed to pay "any and all increase of insurance on said premises above the premium charged on the 21st day of March, 1900." A few days subsequent to the execution of this lease the defendant took an assignment of the same from the original tenant and assumed the performance of all its covenants, conditions, and agreements. The trial justice rendered judgment in favor of the plaintiffs for the sum of $3.30, being an unpaid balance of water tax which the defendant conceded was due; but the residue of the plaintiffs' claim, made up of payments made for fire and plate glass insurance, was disallowed. It further appears from the lease that it covered the entire building, and not merely a part thereof, and that it specified that the premises were to be occupied for the sale of fancy leather goods, trunks, bags, and cutlery on the store floor, and some light similar business above the store floor. The tenant also undertook by the terms of the lease, in addition to the rent reserved, to pay all taxes, assessments, and charges that might be assessed or imposed upon the premises by the city authorities and all charges for Croton water consumed on the premises. The lease was dated May 26, 1902, and was assigned to and its obligations assumed by the defendant three days later. On the 21st day of March, 1900, there was a policy of fire insurance in the amount of $5,000 upon the premises, payable to Bradish J. Smith and Edwin P. Smith, executors, as owners, bearing a premium of $14; the term of the policy being three years, from May 1, 1899, to May 1, 1902. The insurance just named was the only insurance existing upon the premises on the 21st day of March, 1900.

The plaintiffs' counsel further attempted to show upon the trial that between the 21st day of March, 1900, and the 1st day of May, 1902, extensive additions and improvements were made to the premises in question, including a new store front, with plate glass windows, and that when the fire insurance policy above named expired on the 1st day of May, 1902, a new policy in an increased amount was taken out, also in the name of the Smiths. The policy so sought to be introduced was objected to by the defendant's counsel, and was excluded, apparently on the ground that as it was issued to the Smiths, and not to the plaintiffs, it was not covered by the agreement in the lease. Some efforts were also made to show the issuance of plate glass insurance on or about the 1st day of May, 1902; no such insurance having been carried on the 21st day of March, 1900. Such other evidence was also excluded by the trial judge, apparently on the same ground, namely, that it ran to the Smiths, and not to the plaintiffs. Evidence was also excluded showing that the plaintiffs were under obligation to the Smiths, from whom the plaintiffs rented, to pay such additional cost of insurance as they were seeking in this action to impose upon the defendant.

In support of the judgment the respondent argues that, in order

to charge him with the payment of the premiums in question, it is necessary to read into the lease a provision which does not exist, to wit, that he agreed to pay any and all increase of insurance on said premises that might be placed on the premises in favor of the Smiths. With this argument I cannot agree. I can see no reason for limiting the insurance to such as should be issued to the plaintiffs. By the terms of the lease the tenant undertook to pay all taxes, assessments, and charges assessed or imposed upon the premises, and all charges for Croton water consumed on the premises; but no attempt is made to argue that unless such taxes were levied in the name of the plaintiffs as owners, or water bills made out in their name, that such charges would not be covered by the terms of the agreement. The tenant's undertaking with respect to the insurance was phrased in broad and emphatic terms, namely:

"That he will pay any and all increase of insurance on said premises above the premium charged on the 21st day of March, 1900."

In the light of the evidence offered by the plaintiffs, but excluded, I think the situation and intention of the parties was made entirely clear. Between the date named in the agreement, to wit, March 21, 1900, and the beginning of the leasehold period, extensive additions and improvements had been made upon the building, increasing its value and also changing its character, in the substitution of a plate glass front in place of the one formerly existing. Such changes manifestly necessitated fire insurance in an increased amount corresponding to the increased value of the structure, and also plate glass insurance to cover the new front. The defendant's undertaking was, not to pay the additional cost of insurance taken out in the name of the plaintiffs, but "any and all increase of insurance on said premises," meaning thereby without respect to the name of the person to whom the insurance should be made out, whether to the Smiths as owners, or to some one else as mortgagee, provided, only, it was insurance on the premises in question.

Both sides rely upon Noel v. Herman Rencke Lithographing Company (Super. Ct.) 11 N. Y. Supp. 589, affirmed 134 N. Y. 617, 32 N. E. 649; but I cannot see that that case has any bearing on the questions here presented. There it appeared that an agreement was made between the incoming tenant of a part of the building that he would be responsible to the landlord for any increase of insurance over 1 per cent. premium per annum which might be imposed by various insurance companies on the building or on the stock and fixtures of any other tenants in the building. At the time the lease was executed the rest of the building had been let and the cost of insurance fixed, and the plaintiff was liable to the other tenants for any increase of insurance caused by the uses for which the other parts of the building were leased. Immediately thereafter the rates of insurance were increased on the other tenants on account of the extra hazardous character of the defendant's business, which increase the plaintiff was obliged to pay. It was held that the agreement covered such a case, and that the tenant was liable.

Here the situation, as it would have been disclosed by the excluded evidence, shows that there was no question of any contemplated increase in the rate, but only an increase in the amount and character of the insurance. The language selected, namely, "any and all increase of insurance," was suitable to express what the situation shows would have been the reasonable intent of the parties in the circumstances. It should be observed, too, that there is nothing in the language selected to suggest any contemplated increase in the rate, such as was implied in the Noel Case. On the contrary, the increase mentioned and contemplated was that in the premium, which, of course, would naturally increase with any increase in the amount of the fire insurance carried and with the addition of insurance of any other character. My conclusion is that the defendant was bound by the agreement under consideration to pay the additional cost of any and all insurance reasonable in amount and taken out in good faith, whether in the name of the owners or the plaintiffs, and whether fire insurance or plate glass insurance.

The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

GILDERSLEEVE, P. J., concurs.

GREENBAUM, J. (concurring). The mere fact that the new policy was issued to Smith did not justify its exclusion in evidence. It was insurance "on the premises" in question, and came within the provisions of the lease.

The judgment should be reversed, and a new trial ordered, with costs to appellants to abide the event.